2015, 13, 31, and 38. Ms. Goss. Good morning, Your Honor. I'd first like to point out that the district court erred in this case in its claim construction and narrowly construing the word collection to require an accumulation function in this process claim. But before getting to that, and there's a lot of issues to discuss on that, I'd first like to turn to infringements under the doctrine of equivalence. It's important because even under the district court's claim construction, which required accumulation, Axo raised the issue of material fact in an unrebutted declaration opinion from our expert, Dr. Mount. The district court erred by refusing to even consider that evidence and going through a normal equivalence evaluation and instead applied a vitiation analysis that's saying no accumulation can't be equivalent to accumulation. I'll tell you quite frankly, anyone who starts off with an equivalence analysis is almost making a concession on direct equivalence. And I didn't want to draw that inference at all. But let me ask you how a pressurized collection vessel is equivalent to a valve, control valve, or the reverse. Okay. Well, the issue here is on the equivalence analysis is whether or not what we've identified in Dow's equipment as the pressurized collection vessel, which is the downstream equipment that includes a valve, not a pressure relief valve, but whether all of that equipment together is equivalent to the pressurized collection vessel of the claim. And Dr. Mount did that analysis, drew the conclusion that the functions that we need to look at to determine whether or not there's any substantial difference is the function that's recited in the claim, which is, is this equivalence performing the function of maintaining the back pressure on the extruder that's needed to keep the pressure above atmospheric so there's no boiling in the extruder? That's the entire function recited in this claim, both for the pressure relief valve that's not being used, the pressure on the extruder, and the pressure relief valve. So we have to encompass and cover everything and anything that performs that function to achieve that result. That has to be things that are insubstantial differences to the way that you've claimed it. And so that's the concern that I think I heard Judge Lurie express that when we're looking at a series of heat exchangers and a pressure control valve, I mean, how can collection of all of that equipment be deemed to be a pressure ized collection vessel? Okay, so the series of heat exchangers and the control valve is the vessel, even under the court's construction. The court did define vessels to include tubes and piping, and a control valve that stays in a fixed position throughout the entire process is simply a narrowed passageway like a long piece of pipe. So it meets the definition of vessel. So really what we're looking at is whether or not they're vessels. Well, maybe the tubing and the piping, under the district court's understanding, could be deemed a vessel. But now we're talking about a valve, and when I was looking at your specification, it seems like it understood a valve to be an alternative to a collection vessel. And now we have in the accused product something that looks like it's using both together, assuming that heat exchangers can be a vessel. And so the valve that was eliminated from the claims during prosecution is a pressure release valve. The only evidence in the record on that is from Dr. Mount. It's a spring-loaded valve that opens and shuts and opens and shuts and gets clogged. That was deleted from the record. So it's going to flow directly from the extruder into the pressurized collection vessel to create that pressure on the extruder. Dow's process does, in our view, the same thing, literally, under our claim construction. But is there any accumulation or collection in the Dow process? In the Dow process, the extrusion passes directly from the extruder, directly through this little valve. It's not opening and closing. It's not changing aperture. It's just going directly into the heat exchange equipment, which is the tubes and piping. Are you saying the pressure control valve stays the same width the whole time? It does. It does not open and close. I mean, that doesn't sound like a valve to me, then. It is not a valve. It's a valve and the evidence... It sounds more like an entryway. It's a valve that's set during startup. So right at the startup of the procedure, it's set to a specific value, a specific aperture, and it stays in that position the entire time. And if you notice from the documents that are cited by Dow in support of its motion for deferred adjustment... Does that argument work against you? I mean, if the valve... I agree with you that you're describing correctly how the valve functions. But if it did close, then perhaps there'd be accumulation on the back end, on collection. But if it stays open, don't you have a continuous flow as opposed to any type of collection or... Well, you have the same continuous flow that you have into the literally-cited pressurized collection vessel. It goes directly from the extruder into the literally-cited pressurized collection vessel. There's no relief valve in the claims process, either. It's just going free-flowing. In fact, the distinction over Tanaka that Dow's counsel makes is nonsensical because the way ACSO distinguished its aqueous low-viscosity process is by saying that in the Tanaka process, you get a plug or a form of accumulation that forms in the extruder, and that creates the back pressure on the extruder. So the evidence that's in the record is Dow's documents, no expert testimony, Dow's documents that say, we have this control valve, which is just an aperture that's set at the beginning of the process and never changed, and our attorneys say there's constant flow. Well, it is a continuous process. There's no dispute about that. It runs continuously. But Dr. Mount has given the opinion that is worthy of a trial and consideration by a jury that that equipment that doesn't have a pressure-release valve, that has no control over the control valve during the process, is the equivalent to a pressurized collection vessel because it fills up or accumulates the dispersion as the dispersion enters into it and maintains the back pressure on the extruder. I got lost a little bit when I was looking at Dr. Mount's expert declaration, 51 paragraphs long, and he devoted the 51st paragraph to doctrine of equivalence, and I suppose some could say he was very concise. Others might say he was very skimpy on his doctrine of equivalence analysis. Well, the bulk of the opinion is really directed to his understanding of the process and how the process works. The equivalence analysis is to say, I've looked at this, and it's achieving the same function, which is maintaining the back pressure on the extruder. But it's about this substantially the same way, and to that he says, by collecting the dispersed material in a contained volume. And it's ambiguous to me how he's using the word collecting. Is he using it collecting kind of like the way you want it to mean, which is receiving, or is he using collecting in the way the district court understood it, which is it's accumulating? And so what's your answer to that? I would say he's using it in both ways, because collecting in the broadest sense means the receiving or the gathering of the material, and in the narrow sense means the buildup. And the reality of the situation is that in this patent, there's no distinction made or function attributed to in the intrinsic record for, quote, buildup or accumulation of dispersion in the pressurized collection vessel. And if I could, I'd like to turn a little bit to claim construction here, because this really raises a claim construction issue. The claim construction here is with respect to a device. This is a process claim, and the question is, what is the device that is maintaining the back pressure on the extruder? The specification talks about options, but the device that's claimed is something called a pressurized collection vessel that allows free flow of the dispersion from the extruder, and when it enters at a pressure above atmospheric, that maintains the back pressure on the extruder. That's all that's said in the claim. It doesn't say anything about buildup, how much we need, how much needs to be there, how long it needs to be there, because it's really the pressure differential that maintains the back pressure on the extruder. So in our briefs, we have advocated, consistent with the case law, that when this is the intrinsic record, you give the meaning of a word like collection its ordinary meaning, in its full scope, not in its narrow scope of accumulating, like hoarding or building up, but collecting Did you cite any kind of extrinsic evidence, some kind of standard dictionary or technical dictionary that would tell us that collection means merely receiving? Because I didn't see anything in your briefs that... We did. We cited the Webster's dictionary. That's the only dictionary that's cited here. We don't need a dictionary. We can look at your examples, like example two. The dispersion was collected, and then from which the dispersion, once cooled, could be periodically removed. So obviously it was collected. It wasn't just passed through. But it was collected in the sense that it was received, not in the sense that it was accumulated. In fact, the fact that it can be periodically removed, and it doesn't say how periodically or how much you need to build up, is stressing how unimportant accumulation is, and all that's important is the receiving at a pressure above atmospheric. Would you say that a drinking straw is a collection vessel? I don't think a drinking straw would work in the context of the claim, and this is the problem with analogies. Right. No, I'm just trying to understand. What about water flowing through a garden hose? Is that a collection vessel? Well, blood flowing through blood vessels would be a blood vessel. I mean, it's a vessel, so the tube, we know we're beyond the tube in typing here. Right, but we're trying to understand the term collection vessel. Yes, and collection vessel, let me point to one thing here. The only place you find the word accumulation in all of the intrinsic record and the extrinsic evidence, the only place you find the word accumulation is in the dictionary. It is, and it's not the first definition in the dictionary, it's like third or fourth. There is no reference in the patent to any sort of accumulation, build up, hold time. There's no reference in any of the four extrinsic patents that Dow cites to accumulation. They refer to a patent that refers to a collection bath. Periodically removing something doesn't mean that prior to that something was collected. And the case law is very clear that because in that example we refer to periodically removing, we're not restricted to periodically removing. In fact, the patent also makes clear in the specification that this process contemplates further steps, which implies that it could go from the collection vessel into something else, a filtering process. Similar to the extrinsic patent that Dow has cited, the 682 patent, where the word, again, is depicted as a closed vessel. Ms. Doudna, you're well into your rebuttal time, if you'd like to save it. I will. Thank you, Your Honor. Ms. Zavala. Thank you, Your Honor. Good morning, and may it please the Court. First, I'd like to respond to some of counsel's comments about claim construction. Examples two and three, the dispersion was collected into a water-cooled, pressurized vessel from which the dispersion, once cooled to below 100 degrees C, could be periodically removed. Once cooled implies that the material is sitting there. Periodically removed requires that it is not immediately removed, it is removed after a period of time. Both of those assume that accumulation has occurred, and the word collection is used in those examples to mean accumulation. AXO has never disputed that accumulate is one of the meanings of the term collect. They, instead, are asking for a broader construction of collect to mean receive. But they have never disputed that accumulate is a proper meaning of collect. And examples two and three show that it is... What about their rain gutters analogy? Don't you think rain gutters accumulate the rain water from the roof of a house? There are other definitions of collect. The only other one... But it's collecting, isn't it? It's gathering it together. In other words, the rain falls... Okay, you don't want to say collecting, but it is gathering water. I don't want to... It is collecting. Okay, it's collecting water. No, I agree. It's just... I'm agreeing with you that it's not accumulating in the same sense as the accumulates used in the patents. It certainly used to in my gutters when there were leaves in there. And right, if there's leaves in the gutters, there could be accumulations. But collect... Rain collecting in the gutter doesn't mean that the gutter is just receiving the rain. It's received all over the roof. And it's gathered together in the gutter. And we agree. Gathered together is another definition of collect. But acts are never asked in the district court or in this court that collect be construed to mean gathered together. And they've never explained how gathered together makes sense in the context of examples two and three. Gathered together includes aspects of accumulate. It also includes other things where you have things all over the place, like all over the roof in space. And you gather it together in a smaller space. So to the extent gathered together would make any sense at all as a construction in the patent, it would mean accumulate. It would have the same connotations. What there is no evidence for, extrinsic or intrinsic, is an ordinary meaning of collect. That means just received. There's no evidence of that. The only ones that have been pointed to are collect and gather together. What about equivalence? Okay, equivalence. The district court did not, as counsel said, decide that there can be no equivalence to accumulation. The district court decided that AXO's function-weighted results analysis was vitiation because it completely read accumulation out of the claims. What AXO relies on, as AXO's counsel just said, was the function recited in the claim of maintaining the pressure. Assuming we agree that collection means accumulation, I mean, when I was reading the vitiation reasoning by the district court and your arguments, it made me wonder if anything can be the equivalent of accumulation. Certainly. Like maybe you would be thinking that if it doesn't technically accumulate, then it's automatically vitiation. And that seems a little bit too extreme. That's not what we're saying. Here, AXO's function-weighted results argument says there are other limitations of the claim that are met. Therefore, it's equivalence. So AXO's only relying on other claim limitations. So AXO's saying, well, you look at every claim limitation except collect, and if those are met, it's equivalent. Well, I don't think they're going that far. I think they are trying to make a case for why your device is a collection vessel, and the theory, I think, is that there's this dispersion liquid medium that's coming into your vessel, and it's sitting there, at least for a period of time. Well, it's not sitting there. Well, sitting there is not, right, but it resides for a period of time. Okay, so that theory doesn't relate to accumulation. You could have a pipe with water flowing through it with no accumulation at all, and all the water that goes to that pipe is resident in the pipe for a defined period of time. It can't instantaneously jump from the front to the back. All substances in the universe have to take time to travel through space. So that argument, residence time, doesn't mean there's any accumulation. Well, if that's not an equivalent, then what is an equivalent? Equivalent would have to... So they would have to consider the role of accumulation in the claimed invention. For example... Is it your view that a term in a claim doesn't necessarily have to have an equivalent? Well, I don't... Actually, I haven't considered that, Your Honor. There may be equivalents of accumulate. They just didn't... Their analysis just didn't address that point. Accumulation performs a function in the claimed invention. They have to... In order to present a proper functional results analysis, they would have to consider what's the function of accumulation in the claimed invention. What is that function? Well, if you don't have any accumulation in a pressurized vessel, then you have a line of dispersion that ends at atmospheric pressure. And then you are dependent on the inherent pressure of the dispersion and the viscosity of it as it cools to raise the pressure. You can't raise it any other way. But if you accumulate it in a pressurized vessel, you can apply extra pressure at the end of the line of material and that will push the pressure back up into the extruder. That's what happens in examples 2 and 3. It comes out of the line of pipes or whatever that comes out of the extruder. It goes into this tank  So the nitrogen is creating pressure that's pushing back up into the extruder and maintaining the pressure in the extruder at a high value. If you don't have the accumulation, then you have something like Tanaka where the material flows through the It's shown on page 6 of our brief. The material flows out of the extruder into the cooling device and then eventually out the other end. And as it cools, it becomes more viscous and that creates pressure. Whether it becomes a solid or remains a viscous liquid, as it cools, it becomes more viscous and that raises pressure back up inside the extruder. But what comes out the very end of the Tanaka process is shown in figure 1 is atmospheric pressure. So the entire source of your back pressure is the inherent property of the dispersion. What about the DOWS apparatus? And I'm looking at I guess this is a figure at A1097 and it's a picture that was used by Axel's expert. And it's got a red box around the heat exchangers. You're probably familiar with that part. Now, when I look at the heat exchangers, I see a pressure control valve. What is that valve supposed to do? That valve maintains the pressure in the extruder. The pressure in the extruder is around 400-500 psi. That valve is a small aperture. But what does it do? Does it open and close? Well, on this record, their expert said when you're up and running, it doesn't open and close. That's factually not true. But on this record, on summary judgment, we would have to concede that for the purposes of this appeal, it stays at one setting. How could it operate as a pressure control valve if there's not some sort of opening and closing? It has to. So if it does, if it does open and close, when it closes, what happens to the material that's inside the heat exchangers? It doesn't close all the way. Let's say it closes halfway. Or maybe just a tiny bit. It's constantly flowing. So it goes up because there's more material in the heat exchangers? No, because the pressure's higher. But the material's not moving anymore. No, it's still moving. It's still moving. There's just, the pressure's higher. Pressure is just the number of molecular collisions. Temperature is the speed that each molecule hits the wall. Pressure is the number of collisions. So when you compress a gas together, you get more and more collisions. That raises the pressure. So when you, when water's more, liquids are far more complicated, but the volume... Well, I guess I'm looking at the heat exchangers, not so much as a pressurized vessel, but it seems to me that there's accumulation that could occur there. Well, but the valve controls the pressure in the extruder, not the heat exchangers. But it's between both. Right, I know. But if you're correct... So what happens? If you're correct that if you close the valve and that slows down the amount of stuff coming out of the extruders, there'd be de-accumulation, not accumulation. There'd be less material in the heat exchangers. But that doesn't happen. The question might be what is then driving the dispersion through all the heat exchangers? Maybe if there's no propulsion from the extruder, once you turn off the valve, then maybe it's all just sitting there. Maybe that's what Judge Rain is thinking, but that's what has sparked my curiosity. But that doesn't happen. There's constant flow. There's no accumulation. Accumulation also, as AXO admits on page 31 of the Blue Brief, isn't just a building up of material. It's also... There has to be a sense of holding or keeping or impeding for moving on for there to be accumulation. So if things are still moving, constantly moving, every element of fluid that goes into the heat exchangers pushes an element of fluid out the other end, there's no accumulation. There's the same amount of material all the time. Water is an incompressible fluid. Its density is not a function of pressure except at very high temperatures. That's not in the record, but if they wanted to have some theory on summary judgment that changes in the pressure during the extruder would change the amount of fluid in the heat exchangers, they would have had to submit an expert report on that, but they didn't. So I think on this record, the evidence is the changes in pressures that might occur during the process don't change the amount of fluid flowing through the process. Mr. Fowler, I might point out to you you wanted to save two minutes for your cross-appeal. Yes, that's right. If it's mentioned... Yes, I... Thank you. I want to get to... Do you want something too robust? Yes, thank you very much and I do want to get to the indefiniteness issue. So on indefiniteness, the ultimate issue for indefiniteness is what the term viscosity means in the context of the patent to a person of ordinary skill in the art. And that's a question of law for the court to resolve to NOVO and that's explained in the Teva Supreme Court case that said you look outside the context of the patent to see what the meanings of terms are, but then you conduct a legal analysis and that is you look at the context of the patent to see what meaning of the term a person of skill in the art would understand from that patent and that's purely a question of law. There could be underlying issues of fact. Here, both parties submitted extrinsic evidence but there were no disputes about the content of the evidence on the relevant issues. But the district court judge made a call on which side's extrinsic evidence was more persuasive as to understanding how one of ordinary skill in the art would do this measurement. Would the default be at room temperature or would the default be something else? The judge's call to the extent it's on what the term means in the patent is not a question of fact. No, no, I know.  what we will agree is the underlying fact findings that it can and apparently did exist in this indefinite and it's true. So the judge made a call on which side of the challenge. So there are so number one there are no underlying issues of fact and number two the judge didn't make any findings of fact a conclusion on the ultimate issue even if it's an issue of fact under rule 52 is not a is not a finding of fact. I see I'm into my rebuttal time. You can save it or use it. Let me just make one more point before I save the rest for rebuttal time and that is the ASTM on which we rely on the contents that we rely on are not in dispute we rely on section 10.1 on page A545 it says there's four things you have to specify for viscosity in the coating and adhesive art instrument model spindle number rotational speed and temperature and in the patent in the examples where they measure dispersion viscosity of dispersion such as column six lines 45 to 46 they report the instrument model Brookfield viscometer spindle number spindle two rotational speed 12 RPM and they leave out temperature none of that's disputed there's no dispute that the ASTM doesn't report a default temperature or a or even use room temperature at all so we believe in the undisputed facts the legal question has to come out that these claims are indefinite and I'd like to reserve the rest of my time though. Thank you Mr. Powell Thank you Your Honor Just a couple quick points in response ACSO does not admit that accumulation requires holding ACSO merely notices that it's not clear what accumulation requires in fact the district court doesn't really say how much accumulation how long the district court instead said that there was no basis in the claim to read in the negative limitation of no continuous flow but then said that accumulation means no continuous flow so that is another reason why the district court's claim construction should be reversed and a construction entered that's consistent with not only the intrinsic record that places no importance on accumulation but also the extrinsic evidence that DOW cites to each one of those patents also uses the word collection in the gathering sense there's a patent that's directed to separating liquids over here in this vessel from solids over here not to accumulate them but to separate them to gather them into different places I don't want to spend a lot of time on that I want to turn to indefiniteness the ASTM standard that was not submitted through any expert only through the ASTM standard that says you need to specify the temperature unless it's at room temperature and the presumption is if no temperature is specified you're supposed to use room temperature the ASTM standard doesn't say anything about that take that away it's a standard regarding apparent viscosity of hot melt adhesives that sets up a standard for measuring apparent viscosity there's no explanation from any expert as to who's using this for what and when there's nothing in there that says you don't use the room temperature default and every temperature in that ASTM standard is measured at above 100 degrees which by the claim's own definition is going to be completely irrelevant because the claim requires cooling to below 100 degrees I do believe the district court made a fact finding but I also believe that the record is clear enough to affirm the finding de novo but in our view the district court did make a fact finding the parties submitted extrinsic evidence we submitted a declaration they submitted a standard he made the finding of fact what would one of ordinary scale in the art understand when confronted with this and we do believe that the finding of fact and the ultimate conclusion is an issue of law but this really kind of compels the conclusion thank you Ms. Gardner Mr. Barlow will give you two minutes across the field just briefly we agree the ASTM may not necessarily be the default standard but it is the only evidence in the record from the coatings and adhesives art so it's the only evidence showing  person's skill in coatings and adhesives art would understand regarding how to measure viscosity and what has to be specified coatings and adhesives art is the only evidence from that art is     that room temperature is not the only evidence from that art is the ASTM it shows that room temperature is not the default or even very often used and temperature must be specified that's all I have thank you Mr. Barlow we'll take the case under review thank you thank you